# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ALSIP ACQUISITION, LLC., et al.,[1] | ) | Case No. 14-12596 (KJC) |
| | ) | ⅄.J.13,27,65 |
| Debtors. | ) | |
| | ) | (Joint Administration Requested) |

**INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, 363
AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULES 2002, 4001 AND 9014: (1) AUTHORIZING POSTPETITION
FINANCING, (2) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE PRIORITY,
(3) AUTHORIZING USE OF CASH COLLATERAL AND
PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING
THE AUTOMATIC STAY AND (5) SCHEDULING A FINAL HEARING**

Upon the motion (the "***Motion***"),[2] dated November 20, 2014 [D.R. No. 13], of Alsip

Acquisition, LLC (d/b/a Futuremark Paper Company), et al., as debtors and debtors-in-

possession (individually a "***Debtor***", and collectively the "***Debtors***"), pursuant to sections 105,

361, 362, and 364 of Title 11, United States Code (the "***Bankruptcy Code***") and in accordance

with Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy

Rules***") and Rule 4001-2 of the Local Bankruptcy Rules for the District of Delaware (the "***Local

Rules***"), in the above captioned chapter 11 cases (collectively, the "***Chapter 11 Cases***"), for

entry of an interim order (this "***Interim Order***"), granting the following relief on an interim

basis:

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number
are as follows: Alsip Acquisition, LLC (Tax ID No. XX-XXX4908), and APCA, LLC (Tax ID No. XX-XXX3005).

[2] Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms
in the Ratification Agreement (as defined below).

**(I)**    **Interim DIP Financing**

    (A)    Authorizing the Debtors to obtain up to approximately $3,000,000 in post-petition financing, pursuant to that certain: (x) Credit and Security Agreement, dated April 16, 2010 (as may be amended, modified, or supplemented and in effect from time to time, the "**Pre-Petition Credit Agreement**"), and (y) Ratification and Amendment Agreement, dated as of November 20, 2014 (in the form annexed hereto as <u>Exhibit 1</u> and incorporated herein by reference, the "**Ratification Agreement**"; and collectively with the Pre-Petition Credit Agreement, the "**DIP Financing Agreements**"), by and between the Debtors, as borrowers, and Wells Fargo Bank, National Association (in its capacity as lender under the Pre-Petition Credit Agreement, the "**Prepetition Lender**"), and in its capacity as lender under the DIP Financing Agreements, the "**DIP Lender**"), which may be used for funding the Debtors' day-to-day operations and working capital needs, subject in all respects to the Initial Budget (as defined below) and the terms and provisions of this Interim Order (the post-petition credit facility represented in the DIP Financing Agreements shall sometimes be referred to herein as the "**DIP Facility**");

    (B)    Approval of the DIP Financing Agreements and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Lender, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("**UCC**") financing statements, and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto;

    (C)    Granting the DIP Lender the following Liens (as defined in section 101(37) of the Bankruptcy Code) and claims:

        (i)    First priority priming, valid, perfected, and enforceable Liens (as defined below), subject only to the Carve Out (as defined below) and the Permitted Prior Liens (as defined below), upon substantially all of the Debtors' real and personal property as provided in and as contemplated by this Interim Order and the DIP Financing Agreements; and

        (ii)    A superpriority administrative claim in respect of all post-petition obligations under the DIP Financing Agreements (collectively, the "**DIP Obligations**"), subject to the Carve Out as provided herein.

**(II)**    **Interim Use of Cash Collateral**

    (A)    Authorizing the Debtors' use of "cash collateral," as such term is defined in section 363 of the Bankruptcy Code ("**Cash Collateral**"), in which the Prepetition Lender has an interest; and

(B)    Granting the Prepetition Lender certain adequate protection, including, among other things, Adequate Protection Replacement Liens and Adequate Protection Superpriority Claims (each as defined below) and certain other adequate protection as described in this Interim Order, to the extent of any diminution in the value of the Prepetition Lender's interest in the Prepetition Collateral (defined below) having the priority set forth in this Interim Order, as adequate protection for the granting of the DIP Liens to the DIP Lender, the Debtors' use of Cash Collateral, and for the imposition of the automatic stay.

(III)    **Modifying the Automatic Stay** – Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order.

(IV)    **Final Hearing** – Scheduling a final hearing (the "*Final Hearing*") to consider entry of an order (the "*Final Order*") granting the relief requested in the Motion on a final basis and approve the form of notice with respect to the Final Hearing;

and upon consideration of the *Declaration of Stephen L. Silver in Support of First Day Motions*, dated November 20, 2014 (the "*Silver Declaration*"); and the Court having reviewed the Motion and held a hearing with respect to the Motion on November 24, 2014 (the "*Interim Hearing*"); upon the Motion, the Silver  Declaration, and the record of the Interim Hearing, and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

### I.    Procedural Findings of Fact

A.    **Petition Date.**  On November 20, 2014 (the "*Petition Date*"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "*Court*").  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant

3

to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

      B.    **Jurisdiction and Venue.** This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a "core" proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    **Committee Formation.** No official committee (a "*Committee*") of unsecured creditors, equity interest holders, or other parties in interests has been appointed in the Chapter 11 Cases.

      D.    **Notice.** The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, to certain parties in interest, including: (i) the United States Trustee for Region 3; (ii) those creditors holding the twenty-five (25) largest unsecured claims against the Debtors' estates; (iii) the Prepetition Lender; (iv) the DIP Lender; (v) the attorneys for the Prepetition Lender and DIP Lender; and (vi) all secured creditors of record.

DOCS_DE:196365.4 02980/001

## II.    **Debtors' Acknowledgements and Agreements**

E.    Without prejudice to the rights of parties in interest as set forth in Paragraphs 22-

23 below, the Debtors admit, stipulate, acknowledge, and agree that (collectively, Paragraphs E

(1) through E (6) hereof shall be referred to herein as the "***Debtors' Stipulations***"):

(1)    **Prepetition Credit Agreement**. Prior to the commencement of the Chapter 11 Cases, the Debtors were party to the following agreements:

(a)    that certain Credit and Security Agreement, dated April 16, 2010; and

(b)    all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Prepetition Agent and/or Prepetition Lender, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto

(collectively, as amended, modified, or supplemented and in effect from time to time, the "***Prepetition Financing Agreements***").

(2)    **Prepetition Debt Amounts**. As of the Petition Date, the Debtors were indebted to the Prepetition Lender for the following amounts:

(a)    under the Prepetition Financing Agreements, on account of extensions of credit in the approximate principal amount of $8,038,639, plus interest accrued and accruing (at the rates set forth in the Prepetition Financing Agreements (including the default rate, to the extent allowed)), costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services secured by the Prepetition Financing Agreements (collectively the "***Prepetition Debt***")[3]; and

---

[3]    The acknowledgments and agreements by the Debtors of the Prepetition Debt and the related Liens, rights priorities and protections granted to or in favor of the Prepetition Lender, as set forth herein and in the Prepetition Financing Agreements, shall constitute a proof of claim on behalf of the Prepetition Lender in these Chapter 11 Cases in respect of the Prepetition Debt, and the Prepetition Lender shall not be required to file any additional or other proofs of claim in the Chapter 11 Cases to evidence the obligations represented by the Prepetition Debt or the claims related thereto.

5

(3)    **Prepetition Collateral**. To secure the Prepetition Debt, the Debtors granted security interests and Liens (collectively, the "***Prepetition Liens***") to the Prepetition Agent, for the benefit of the Prepetition Lender, in, to and upon substantially all of its personal property, including items defined as "Collateral" in the Prepetition Security Agreement (collectively, the "***Prepetition Collateral***"). The Prepetition Liens have priority over all other Liens, except any Liens which are valid, properly perfected, unavoidable, and senior to the Prepetition Liens (collectively, the "***Permitted Prior Liens***").

(4)    **Prepetition Liens**.

(a)    As of the Petition Date, the Debtors believe the following:

(i)    the Prepetition Liens are valid, binding, enforceable, and perfected first-priority Liens, subject only to any Permitted Prior Liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(ii)    the Prepetition Debt constitutes legal, valid, and binding obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(iii)    no offsets, defenses, or counterclaims to any of the Prepetition Debt exists;

(iv)    no portion of the Prepetition Debt is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and

(v)    the Prepetition Debt constitutes an allowable secured claim.

(b)    On the date that this Interim Order is entered, the Debtors shall have waived, discharged, and released the Prepetition Lender, together with its affiliates, agents, attorneys, officers, directors, and employees, of any right the Debtors may have:

(i)    to challenge or object to any of the Prepetition Debt,

(ii)    to challenge or object to the security for the Prepetition Debt, including, without limitation, the Prepetition Liens in and upon the Prepetition Collateral, and

(iii)    to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising

6

out of, based upon, or related to the Prepetition Financing Agreements or otherwise.

(c)    The Debtors do not possess and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Debt, the Prepetition Financing Agreements, or the Prepetition Liens, or any claim of the Prepetition Lender pursuant to the Prepetition Financing Agreements or otherwise.

(5)    **Cash Collateral.** The Prepetition Lender has a security interest in and Lien on certain Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts and all proceeds of the Prepetition Collateral, to secure the Prepetition Debt.

(6)    **Priming of DIP Facility**. In entering into the DIP Financing Agreements, and as consideration therefor, the Debtors hereby agree that until such time as all Obligations (as defined in the DIP Financing Agreements) have been irrevocably paid in full in cash (or other arrangements for payment of the Obligations satisfactory to the DIP Lender in its sole and exclusive discretion have been made) and the DIP Financing Agreements have been terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Lender under this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

## III.    Findings Regarding the Postpetition Financing.

F.    **Need for Post-Petition Financing**. An immediate need exists for the Debtors to obtain funds under the DIP Facility in order to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates, creditors, equity holders, and the possibility for a successful reorganization or sale of the Debtors' assets.

G.    **No Credit Available on More Favorable Terms**. The Debtors have been unable to obtain any of the following:

7

(1)    unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

(2)    credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

(3)    credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or

(4)    credit for money borrowed secured by a junior Lien on property of the estates which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP Financing Agreements and this Interim Order.

The Debtors are unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

H.    **Prior Liens.**  Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens or Prepetition Liens are valid, senior, perfected, or unavoidable. Moreover, nothing shall prejudice the following:

(1)    the rights of any party-in-interest, including, but not limited to, the Pre-Petition Lender, the DIP Lender, and any Committee appointed pursuant to section 1102 of the Bankruptcy Code, to challenge the validity, priority, perfection, and extent of any such Permitted Prior Liens, or

(2)    the rights of any Committee appointed pursuant to section 1102 of the Bankruptcy Code to challenge the validity, priority, perfection, and extent of the Prepetition Liens as set forth in this Interim Order.

I.    **Adequate Protection for Prepetition Lender.**  As a result of the grant of the DIP Liens, subordination to the Carve Out, the use of Cash Collateral authorized herein, and the imposition of the automatic stay, the Prepetition Lender is entitled to receive adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code for any decrease in the value of their interests in the Prepetition Collateral (including Cash Collateral) resulting from the automatic stay or the Debtors' use, sale, or lease of the Prepetition Collateral (including Cash Collateral) during these Chapter 11 Cases. As adequate protection, the Prepetition Lender will receive the Adequate Protection (as defined below) described in Paragraph 14 of this Interim

8

Order. In light of such Adequate Protection, the Prepetition Lender: (1) has consented to the Debtors' use of Cash Collateral, on the terms set forth in this Interim Order, (2) agrees that the Adequate Protection adequately protects the Prepetition Lender, subject to Prepetition Lender's rights to seek additional adequate protection of its interests in accordance with Paragraph 15 below, and (3) subject to Paragraphs, 15, 35, and 36, no further adequate protection is necessary at this time.

J.    **Prepetition Lender's Consent to Priming.** Subject to the terms of this Interim Order, including, without limitation, the grant of Adequate Protection as provided herein, the Prepetition Lender has consented to the priming of the Prepetition Liens by the DIP Liens.

K.    **Adequacy of the Budget.** The Initial Budget, attached hereto as Exhibit "2", is adequate, considering all the available assets, to pay the administrative expenses due and accruing during the period covered by this Interim Order.

L.    **Section 552 of the Bankruptcy Code.** In light of their agreement to subordinate their Liens and superpriority claims (1) only to the Carve Out, in the case of DIP Lender, and (2) only to the Carve Out and the DIP Liens, in the case of the Prepetition Lender, the DIP Lender and the Prepetition Lender are each entitled to: (a) upon entry of the Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code, and (b) all rights and benefits of section 552(b) of the Bankruptcy Code and, upon entry of the Final Order, the Debtors shall not assert that the "equities of the case" exception shall apply.

M.    **Conditions Precedent to DIP Lender's Extension of Financing.** The DIP Lender has indicated a willingness to provide financing to the Debtors in accordance with the DIP Financing Agreements, and subject to the following:

(1)    the entry of this Interim Order and a Final Order, and

9

(2)    findings by this Court that such financing is essential to the Debtors' estate, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests, and Liens and other protections granted pursuant to this Interim Order (and the Final Order) and the DIP Facility will not be affected by any subsequent reversal, modification, vacation, or amendment of this Interim Order (or the Final Order) or any other order, as provided in section 364(e) of the Bankruptcy Code.

N.    **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.** The terms and conditions of the DIP Facility, the DIP Financing Agreements, and the fees paid and to be paid thereunder (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arms' length between the Debtors and the DIP Lender, and the use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

O.    **Relief Essential; Best Interest.** The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets and personal property. It is in the best interest of Debtors' estates that the Debtors be allowed to establish the DIP Facility contemplated by the DIP Financing Agreements. The Debtors have demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.    The Motion is granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Financing Agreements.

DOCS_DE:196365.4 02980/001

## I.    DIP FINANCING

### A.    Approval of Entry into the DIP Financing Agreements

2.    The Debtors are expressly and immediately authorized to execute and deliver the DIP Financing Agreements and to incur and to perform the post-petition Obligations thereunder in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Agreements. The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Financing Agreements as such become due, including, without limitation, reasonable attorneys', financial advisors' and accountants' fees, and disbursements as provided for in the DIP Financing Agreements, which amounts, subject to the provisions of Paragraph 44 below (solely with regard to reimbursement of the DIP Lender's reasonable attorneys', financial advisors' and accountants' fees, and disbursements), shall not otherwise be subject to approval of this Court. Upon execution and delivery, the DIP Financing Agreements shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

### B.    Authorization to Borrow

3.    In order to enable it to continue to operate their business during the period between the entry of this Interim Order and the conduct of the Final Hearing (the "*Interim Period*"), and subject to the terms and conditions of this Interim Order, the DIP Financing Agreements, and the Initial Budget (subject to any variances thereto permitted under the terms and conditions of the Ratification Agreement), the Debtors are hereby authorized under the DIP Facility to borrow up to a total committed amount of $3,000,000.00 in accordance with the terms

11

and conditions of the DIP Financing Agreements, but only up to $830,668.00 during the Interim

Period.

## C.    Application of DIP Facility Proceeds

4.      The proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and

expenses under the DIP Financing Agreements) shall be used, in each case in a manner

consistent with the terms and conditions of the DIP Financing Agreements, and in accordance

with and as may be limited by the Initial Budget (subject to any variances thereto permitted

under the terms and conditions of the Ratification Agreement), solely as follows:

> (a)      to pay costs, expenses and fees in connection with the preparation, negotiation, execution and delivery of the DIP Financing Agreements;

> (b)      for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof for working capital, capital expenditures, and other lawful corporate purposes of the Debtors, in each case subject to and as set forth in the Budget (subject to such variances as are permitted under the Ratification Agreement and/or this Interim Order); and

> (c)      to fund the Prepetition Indemnity Account (as defined below).

## D.    Conditions Precedent

5.      The DIP Lender shall not have any obligation to make any loan or advance under

the DIP Financing Agreements during the Interim Period unless the conditions precedent to

make such loan under the DIP Financing Agreements have been satisfied in full or waived, as

determined by the DIP Lender in its exclusive discretion, in accordance with the DIP Financing

Agreements.

## E.    The DIP Liens

6.      Effective immediately upon the entry of this Interim Order, the DIP Lender is

hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy

Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests and Liens (collectively, the "*DIP Liens*") senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates except as otherwise provided in this Interim Order, upon and to all of the following (collectively, the "*DIP Collateral*"):

    (a)    All Pre-Petition Collateral (as defined in the Ratification Agreement);

    (b)    All Post-Petition Collateral (as defined in the Ratification Agreement, including:

        (i)    all Accounts;

        (ii)    all Goods, including Equipment, Inventory and Fixtures;

        (iii)    all Documents, Instruments and Chattel Paper;

        (iv)    all Letters of Credit and Letter-of-Credit Rights;

        (v)    all Securities Collateral;

        (vi)    all Investment Property;

        (vii)    all Intellectual Property Collateral;

        (viii)    all Commercial Tort Claims;

        (ix)    all General Intangibles;

        (x)    all Deposit Accounts;

        (xi)    all Supporting Obligations;

        (xii)    all books and records relating to the Collateral; and

        (xiii)    to the extent not covered by clauses (i) through (xii), all other personal property of the Debtors, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtors from time to time with respect to any of the foregoing;

    (c)    Upon entry of the Final Order, any proceeds from claims and causes of action to which the Debtors may be entitled to assert by reason of any avoidance or other

13

power vested in or on behalf of the Debtors or the estates of the Debtors under Chapter 5 of the Bankruptcy Code and any and all recoveries and settlements thereof; and

(d)     All owned real estate of the Debtors, all proceeds from the disposition of real estate, and all proceeds from the disposition of real estate leases; provided that, with respect to the Debtors' non-residential real property leases, and notwithstanding anything to the contrary in this Interim Order or any financing agreements or documents, no liens or encumbrances shall be granted on or extend to the Debtors' real property leases themselves, but rather, any liens granted shall extend only to the proceeds realized upon the sale, assignment, termination, or other disposition of such real property lease(s).

## F.     DIP Lien Priority

7.      The DIP Liens to be created and granted to the DIP Lender, as provided herein, are:

(a)     created pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code,

(b)     first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to the DIP Collateral, and

(c)     subject only to (i) the Carve Out, and (ii) the Permitted Prior Liens.

The DIP Liens shall secure all DIP Obligations and the proceeds of the DIP Collateral shall be applied in the same order and priority set forth in the DIP Financing Agreements.  The DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each a "***Successor Case***", and collectively the "***Successor Cases***"), and/or upon the dismissal of the Chapter 11 Cases.  The DIP Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or the assertion by the Debtors of the "equities of the case" exception of section 552 of the Bankruptcy Code, and, upon entry of the Final Order, shall not be subject to section 506(c) of the Bankruptcy Code.

14

## G.    Enforceable Obligations

8.    The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtors, and shall be enforceable against the Debtors, their estates, and any successors thereto, and their creditors in accordance with their terms.

## H.    Protection of the DIP Lender and Other Rights

9.    From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreements and this Interim Order, and in compliance with the Interim Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

## I.    Superpriority Administrative Claim Status

10.    Subject to the Carve Out and the Bid Protections, to the extent approved by the Court in connection with the Substantial Asset Disposition Motion (as defined in the Ratification Agreement), all DIP Obligations shall be an allowed superpriority administrative expense claim (the *"DIP Superpriority Claim"* and, together with the DIP Liens, collectively, the *"DIP Protections"*) with priority in the Chapter 11 Cases (and any Successor Cases) under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of a Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment.

15

11.    Other than the Carve Out and the Bid Protections, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

## II.    USE OF CASH COLLATERAL

### A.    Authorization to Use Cash Collateral

12.    Pursuant to the terms and conditions of this Interim Order, the DIP Facility, the DIP Financing Agreements, and in accordance with and as may be limited by the budget attached hereto and made a part hereof as Exhibit "2" (as the same may be modified, supplemented, or updated from time to time consistent with the terms of the Ratification Agreement, the "*Initial Budget*"), the Debtors are authorized to use Cash Collateral and to use the advances under the DIP Facility during the period commencing immediately after the entry of the Interim Order and terminating upon notice being provided by the DIP Lender to the Debtors that: (i) a DIP Order Event of Default (as defined below) has occurred and is continuing, and (ii) the termination of the DIP Facility.

13.    Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or other proceeds resulting therefrom, except (x) with respect to the sale of assets as contemplated in the Substantial Asset Disposition Motion (as defined in the Ratification Agreement), and (y) as otherwise permitted in the DIP Facility under the DIP Financing Agreements, and in accordance with and as may be limited by the Initial Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Financing Agreements).

16

**B.    Adequate Protection for Prepetition Lender**

14.    As adequate protection for the interest of the Prepetition Lender in the Prepetition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, subordination to the Carve Out, the Debtors' use of Cash Collateral, and other decline in value arising out of the automatic stay or the Debtors' use, sale, depreciation, or disposition of the Prepetition Collateral, including the disposition of assets as contemplated in the Substantial Asset Disposition Motion, the Prepetition Lender shall receive adequate protection as follows (collectively, "*Adequate Protection*"):

(a)    **Adequate Protection Replacement Liens**. Solely to the extent of the diminution in the value of the interest of the Prepetition Lender in the Prepetition Collateral, the Prepetition Lender shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in the DIP Collateral (the "*Adequate Protection Replacement Liens*") which shall be junior only to the Carve Out, the DIP Liens securing the DIP Facility, and Permitted Prior Liens.

(b)    **Adequate Protection Superpriority Claim**. Solely to the extent of the diminution in the value of the interests of the Prepetition Lender in the Prepetition Collateral, the Prepetition Lender shall have an allowed superpriority administrative expense claim (the "*Adequate Protection Superpriority Claim*") which shall have priority (except with respect to (i) the DIP Liens, (ii) the DIP Superpriority Claim, and (iii) the Carve Out), in the Chapter 11 Cases under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment.

Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Cases, will be senior to, prior to, or on parity with the Adequate Protection Superpriority Claim.

(c)    **Adequate Protection Payments**. The Prepetition Lender shall receive additional adequate protection in the form of the following:

17

(i)    the current payment of the reasonable documented out-of-pocket costs and expenses of its financial advisors and attorneys,

(ii)    cash interest at the rates as provided in the Prepetition Financing Agreements,

(iii)    after payment of any outstanding DIP Obligations, all products and proceeds of the Prepetition Collateral (including, for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of business, insurance proceeds, and proceeds of all dispositions thereof, whether or not in the ordinary course, including all proceeds incidental to the Debtors' Substantial Asset Disposition Motion (net of (i) any payment required to be made at a closing thereof to the Stalking Horse in respect of any Court-approved break-up fee and/or other monetary bid protections, and (ii) the set aside for accrued and unpaid fees and expenses of Case Professionals as set forth in the Ratification Agreement)), regardless of whether such collateral came into existence prior to the Petition Date;

provided, however, that all rights of any party-in-interest (including any Committee, but excluding the Debtors) with requisite standing that has been sought and granted by this Court are hereby reserved through and including the Challenge Period Termination Date to assert that any of the foregoing payments made in respect of the Pre-Petition Obligations should instead be recharacterized as principal repayments on account of the obligations due and owing under the Prepetition Financing Agreements; provided, further, however, the Prepetition Lender reserves any and all rights, claims and defenses as to any such recharacterization request.

(d)    **Adequate Protection Upon Approval of Substantial Asset Disposition Motion**. The sale process to be implemented under section 363 of the Bankruptcy Code as provided in the Substantial Asset Disposition Motion, including the timeline and milestones contained therein, shall not be modified without the prior written consent of the Prepetition Lender. Upon the disposition of Prepetition Collateral as contemplated in the Substantial Asset Disposition Motion, any such Prepetition Collateral shall be sold free and clear of the Prepetition Liens, the Adequate Protection Replacement Liens, and the DIP Liens; provided that, that (x) such Prepetition Liens, Adequate Protection Replacement Liens, and DIP Liens shall attach to the proceeds of any such sale, and (y) those proceeds shall be paid to the Prepetition Lender and the DIP Lender, as applicable, at the closing on such sale in the order and priority set forth in DIP Financing Agreements.

(e)    **Access to Records**. In addition to, and without limiting, whatever rights to access the Prepetition Lender has under the Prepetition Financing Agreements, upon

18

reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Prepetition Lender: (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

(f)   **Prepetition Indemnity Account.**   Upon entry of the Final Order, the Debtors shall establish an account in the control of the Prepetition Lender (the "*Prepetition Indemnity Account*"), into which the sum of $150,000.00 of Cash Collateral shall be deposited as security for any reimbursement, indemnification, or similar continuing obligations of the Debtors in favor of the Prepetition Lender under the Prepetition Financing Agreements, including without limitation, the provisions of Sections 10.04(a) and (b) of the Prepetition Credit Agreement (the "*Prepetition Indemnity Obligations*").

(i)   Upon the Challenge Period Termination Date (as defined below) if, as of such date, no party has filed (x) an adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in Paragraph 22 hereof, or (y) an adversary proceeding, cause of action, objection, claim, defense, or other challenge against the Prepetition Lender related to the Prepetition Debt, whether in the Chapter 11 Cases or independently in another forum, court, or venue (together, a "*Challenge Proceeding*"), all amounts then remaining and being held in the Prepetition Indemnity Account shall be released to the Debtors.

(ii)   The Prepetition Indemnity Obligations shall be secured by a first priority lien on the Prepetition Indemnity Account, and the Prepetition Indemnity Account shall also secure the Adequate Protection Superpriority Claim.

(iii)   The Prepetition Lender may apply amounts in the Prepetition Indemnity Account against the Prepetition Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, any Committee or any other parties in interest and without further order of this Court, upon compliance with the provisions of Paragraph 44 below.

**C.   Section 507(b) Reservation for the DIP
      Lender to Seek Further Adequate Protection**

15.   Nothing herein shall impair or modify the Prepetition Lender's rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Lender hereunder is insufficient to compensate for the diminution in value of the interest of the Prepetition Lender in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases; provided, however, that any section 507(b) claim granted in the Chapter 11

Cases to the Prepetition Lender shall be junior in right of payment to all DIP Obligations and subject to the Carve Out.

### III.    POSTPETITION LIEN PERFECTION

16.    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of Lien, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Adequate Protection Replacement Liens or to entitle the DIP Liens and the Adequate Protection Replacement Liens to the priorities granted herein.

17.    Notwithstanding the foregoing, the DIP Lender may, in its discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.

18.    The Debtors shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents as the DIP Lender may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens granted pursuant hereto.

20

19.    The DIP Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Interim Order.

20.    The DIP Lender shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be the successors-in-interest to the Prepetition Lender with respect to all third party notifications in connection with the Prepetition Financing Agreements, all Prepetition Collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements.

21.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Financing Agreements as necessary to

(a)    permit the Debtors to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Lender under the DIP Financing Agreements, the DIP Facility, and this Interim Order, and

(b)    authorize the DIP Lender and the Prepetition Lender to retain and apply payments hereunder as provided by the DIP Financing Agreements and this Interim Order.

## IV.    RESERVATION OF CERTAIN THIRD PARTY RIGHTS AND BAR OF CHALLENGES AND CLAIMS

22.    Nothing in this Interim Order or the DIP Financing Agreements shall prejudice whatever rights any Committee(s) or any other party-in-interest (other than the Debtors) with

DOCS_DE:196365.4 02980/001

requisite standing that has been sought and granted by this Court may have to commence and prosecute a Challenge Proceeding:

(a)    to object to or challenge the Debtors' Stipulations, including (i) the validity, extent, perfection, or priority of the security interests and Prepetition Liens of the Prepetition Lender in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Debt, or

(b)    to bring suit against the Prepetition Lender in connection with or related to the Prepetition Debt, or the actions or inactions of the Prepetition Lender arising out of or related to the Prepetition Debt;

provided, however, that unless any official Committee(s) or any other party-in-interest with requisite standing[4] commences a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Prepetition Lender in the nature of a setoff, counterclaim, or defense to the Prepetition Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against the Prepetition Lender), by the later of (x) **sixty (60) days** following the appointment of the first official Committee, or (y) if no official Committee is appointed, **seventy-five (75) days** following entry of this Interim Order (collectively, (x) and (y) shall be referred to as the "*Challenge Period*"; and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "*Challenge Period Termination Date*"), any and all such challenges and objections by any party (including, without limitation, any official Committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Cases, and any other party-in-interest) **shall be deemed to be forever waived and barred**, and the Prepetition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim

---

[4] The issue of whether a Committee or other party-in-interest must obtain an order from the Court that such Committee or other party-in-interest has standing to pursue a Challenge Proceeding prior to the Challenge Period Termination Date is reserved until a Final Hearing

22

within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases and the Debtors' Stipulations shall be binding on all creditors, interest holders, and parties-in-interest. Notwithstanding anything in the preceding sentence, if, prior to the Challenge Period Termination Date, the Bankruptcy Court enters an order converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, the Challenge Period shall be extended solely with respect to the chapter 7 trustee for 60 days from the entry of such order. Notwithstanding anything herein to the contrary, neither the proceeds of the DIP Financing Agreements, the DIP Collateral, the Prepetition Collateral, including the Cash Collateral, nor the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Financing Agreements, the Pre-Petition Financing Agreements, the Pre-Petition Liens, or the DIP Liens or claims granted under this Interim Order, the DIP Financing Agreements, or the Pre-Petition Financing Agreements, (b) assert any claims and defenses or any other causes of action against the DIP Lender, the Pre-Petition Lender, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Lender's and/or the Pre-Petition Lender's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Financing Agreements and/or the Pre-Petition Financing Agreements, or this Interim Order, (d) seek to modify any of the rights granted to the DIP Lender and/or the Pre-Petition Lender hereunder or under the DIP Financing Agreements and/or the Pre-Petition Financing Agreements, as applicable (in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent), or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court; provided that, notwithstanding anything to the contrary

23

herein, and subject to any limitations contained in the Initial Budget, the proceeds of the DIP Facility, the DIP Collateral and/or the Carve Out may be used by a Committee to investigate the validity, enforceability or priority of the obligations and liens under the Pre-Petition Financing Agreements, or investigate any claims and defenses or other causes action against the Pre-Petition Lender. If a party is successful pursuant to a final non-appealable order in (i) its challenge to the validity, extent, perfection or priority of the mortgage, security interests and liens of the Pre-Petition Lender in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Debt, or (b) its suit against the Pre-Petition Lender in connection with or related to the Pre-Petition Debt, or the actions or inactions of any of the Pre-Petition Lender arising out of or related to the Pre-Petition Debt, the Pre-Petition Lender shall comply with such order regarding repayment or clawback of post-petition amounts applied to the Pre-Petition Obligations.

23.    To the extent any such Challenge Proceeding is filed, the Prepetition Lender shall be entitled to include the costs and expenses, including, but not limited to, reasonable attorneys' fees and disbursements, incurred in defending the objection or complaint as part of the Prepetition Debt to the extent permitted pursuant to the relevant Prepetition Financing Agreements. To the extent any such objection or complaint is filed (or as part of any agreed upon resolution thereof), the Prepetition Lender shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Prepetition Debt and as part of the Prepetition Indemnity Obligations which shall be reimbursed by the Debtors, including (x) each month as provided for in Paragraph 44, below, and (y) out of the Prepetition Indemnity Account, and as one of the Adequate Protection Superpriority Claim, and the Prepetition Indemnity Account shall be

24

maintained until the final resolution of all such objections or claims. The Debtors shall remain

liable to the Prepetition Lender for all unpaid Prepetition Indemnity Obligations to the extent that

the funds in the Prepetition Indemnity Account are insufficient to satisfy them in full.

## V.    CARVE OUT AND PAYMENT OF PROFESSIONALS.

24.    Subject to the terms and conditions contained herein, the DIP Liens, DIP

Superpriority Claim, the Prepetition Liens, the Adequate Protection Replacement Liens, and the

Adequate Protection Superpriority Claim are subordinate only to the following (collectively, the

"*Carve Out*"):

(a)    allowed administrative expenses in respect of fees required to be paid to
the Clerk of the Bankruptcy Court;

(b)    all statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. §
1930(a)(6) plus interest, if any, pursuant to 31 U.S.C. § 3717;

(c)    all actually accrued and unpaid expenditures (other than fees and expenses
of Case Professionals) as provided in the Budget through the date the DIP Facility is
terminated pursuant to the Interim Order or the Final Order, as applicable, subject to and
as limited by the Budget;

(d)    all actually accrued and unpaid expenditures for reasonable fees,
disbursements, costs and expenses incurred by professional persons or firms retained by
the Debtors pursuant to Final Order of the Court (each a "*Debtor Professional*" and
collectively the "*Debtor Professionals*" (the "*Debtor Professional Fees*"), to the extent
allowed at any time by Final Order of the Bankruptcy Court, prior to the date of service
by the DIP Lender of a Carve Out Trigger Notice (defined below), in each case not in
excess of the respective Initial Budget amounts for each Debtor Professional or category
of Debtor Professional through the date of service of said Carve Out Trigger Notice,
whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out
Trigger Notice, *less* the amount of unapplied pre-petition retainers held by such Debtor
Professionals;

(e)    subject to such limitations as appear in the Interim Budget, all actually
accrued and unpaid expenditures for fees, disbursements, costs and expenses incurred by
professional persons or firms retained by the Committee (the "*Committee Professional
Fees*") pursuant to Final Order of the Court (each a "*Committee Professional*" and
collectively the "*Committee Professionals*"; and collectively with the Debtor
Professionals the "*Case Professionals*"), to the extent allowed at any time by Final Order
of the Bankruptcy Court, prior to the date of service by the DIP Lender of a Carve Out
Trigger Notice, in each case, not in excess of the respective Budget amounts for each

25

Committee Professional or category of Committee Professional through the date of service of said Carve Out Trigger Notice, whether allowed by the Bankruptcy Court prior to or after delivery of a Carve Out Trigger Notice, *less* the amount of unapplied pre-petition retainers held by such Committee Professionals;

(f)     subject to such limitations as appear in the Interim Budget for Debtor Professional Fees, an amount equal to the allowed amount of any "Success Fee" earned by Sanabe & Associates, LLC, if any, under that certain engagement agreement dated as of November 20, 2014; provided that, any such amount shall be paid from the proceeds of the sale of the Debtors' assets pursuant to a Substantial Asset Disposition consummated in accordance with the Substantial Asset Disposition Bidding Procedures;

(g)     all accrued and unpaid Debtor Professional Fees incurred from and after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time by Final Order of the Bankruptcy Court, in an aggregate amount not to exceed $50,000.00, less the amount of unapplied pre-petition retainers held by such Debtor Professionals and not applied to the Debtor Professional Fees set forth in clause (c) above; and

(h)     all accrued and unpaid Committee Professionals Fees incurred from and after the date of service of a Carve Out Trigger Notice, to the extent allowed at any time by Final Order of the Bankruptcy Court, in an aggregate amount not to exceed $25,000.00, less the amount of unapplied pre-petition retainers held by such Committee Professionals and not applied to the Committee Professional Fees set forth in clause (d) above.

Following the Petition Date, the Debtor Professional Fees and the Committee Professional Fees shall be paid first from retainers held by such professionals, and such payment from retainers shall reduce dollar for dollar the Carve-Out Cap (as defined below) applicable to such Case Professional(s). For the avoidance of doubt, the Carve-Out shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Case Professionals. For purposes of the foregoing, the term *"Carve-Out Cap"* means, in the aggregate, the amounts set forth in clauses (c) through and including (f) above, and the term *"Carve Out Trigger Notice"* shall mean a written notice delivered by the DIP Lender to the Debtors and their counsel, counsel to the Prepetition Lender, the United States Trustee, and counsel to any Committee, which notice may be delivered at any time following the occurrence and continuance of any DIP Order Event of Default.

25.    For the avoidance of doubt, the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Replacement Liens, and the Adequate Protection Superpriority Claim, and any and all other forms of adequate protection, Liens, or claims securing the DIP Obligations and/or the Prepetition Debt granted or recognized as valid. Any unused portion of the Carve Out shall at all times remain Cash Collateral as provided herein.

26.    Notwithstanding anything to the contrary contained herein, so long as a no notice of the occurrence of a DIP Event of Default shall have been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable and allowed by the Court, but always as provided in and as may be limited by the Initial Budget. Further, nothing contained herein shall limit payment of compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable and allowed by the Court even if they exceed the amounts contained in the Initial Budget, out of funds other than the Carve Out after the DIP Obligations and Prepetition Debt have each been irrevocably paid in full to the DIP Lender and Prepetition Lender, respectively.

27.    Nothing herein, including the inclusion of line items in the Initial Budget for Case Professionals, shall be construed as consent by either the DIP Lender or the Prepetition Lender to the allowance of any professional fees or expenses of the Debtors, of any Committee, or of any person, nor shall it affect the right of the DIP Lender or the Prepetition Lender to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Initial Budget.

DOCS_DE:196365.4 02980/001

## VI.    COMMITMENT TERMINATION DATE,
## DIP EVENT OF DEFAULT, AND REMEDIES

**A.    Commitment Termination Date**

28.    All DIP Obligations shall be immediately due and payable and all authority to use the proceeds of the DIP Facility and to use Cash Collateral shall cease on the date that is the earliest to occur of any of the following (the "***Commitment Termination Date***"):

(a)    December 31, 2014;

(b)    the date on which the maturity of the DIP Obligations is accelerated and the commitments under the DIP Facility (the "***DIP Commitments***") have been irrevocably terminated as a result of the occurrence of an Event of Default (as defined in the DIP Financing Agreements)[5];

(c)    the failure of the Debtors to obtain entry of the Final Order on or before the date which is thirty (30) days after the date this Interim Order is entered; or

(d)    the closing of a sale following entry of an order by the Bankruptcy Court authorizing the sale of all or substantially all of the assets of the Debtors pursuant to the provisions of section 363 of the Bankruptcy Code, whether pursuant to the Substantial Asset Disposition Motion or otherwise.

**B.    DIP Events of Default**

29.    The occurrence of the Commitment Termination Date shall constitute a "***DIP Order Event of Default.***"

30.    Unless and until the Prepetition Debt and the DIP Obligations have been irrevocably repaid in full in cash, or as otherwise ordered by the Court (or other arrangements for payment of the Prepetition Debt and the DIP Obligations satisfactory to the DIP Lender and Prepetition Lender, respectively, in their sole and exclusive discretion have been made) and all DIP Commitments have been irrevocably terminated, the protections afforded to the Prepetition Lender and the DIP Lender pursuant to this Interim Order and under the DIP Financing

---

[5] Provided that DIP Lender may not declare as Event of Default based on the Debtor's failure to comply with Section 1.1(w)(ii) and the Ratification Agreement on the grounds that the hearing on the Substantial Asset Disposition Bidding Procedure has been scheduled for December 9, 2014.

28

Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming one or more plan(s) of reorganization or liquidation pursuant to Chapter 11 of the Bankruptcy Code in the Debtors' Chapter 11 Cases (a "*Plan*") or converting the Chapter 11 Cases into Successor Cases, and the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Replacement Liens, and the Adequate Protection Superpriority Claim shall continue in the Chapter 11 Cases and in any Successor Cases, and such DIP Liens, DIP Superpriority Claim, Adequate Protection Replacement Liens, and Adequate Protection Superpriority Claim shall maintain their respective priorities as provided by this Interim Order.

**C.     Rights and Remedies Upon DIP Order Event of Default**

31.     Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that (i) after the occurrence of any Event of Default under the DIP Financing Agreements, the DIP Lender may accelerate the DIP Obligations without further order of the Court, and (ii)(A) after the occurrence of any DIP Order Event of Default or (B) at any time thereafter during the continuance of such DIP Order Event of Default, upon five (5) days' prior written notice of such occurrence, in each case given to each of (i) the Debtors, (ii) counsel to the Debtors, (iii) counsel for any Committee(s) (or if no Committee has been appointed, the Debtors' thirty (30) largest unsecured creditors), and (iv) the Office of the United States Trustee, the DIP Lender shall be entitled to exercise its rights and remedies in accordance with the DIP Financing Agreements.

32.     Upon the occurrence of an Event of Default under the DIP Financing Agreements, and provided that such Event of Default is still continuing:

(a)     the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Lender as provided in the DIP Financing Agreements and this Interim Order;

(b)     the DIP Lender shall continue to apply such proceeds in accordance with the provisions of the DIP Financing Agreements and this Interim Order;

29

(c)    the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the DIP Obligations and the Carve Out; and

(d)    any obligation otherwise imposed on the DIP Lender to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended.

33.    Following the giving of written notice by the DIP Lender of the occurrence of a DIP Order Event of Default, the Debtors and any Committee(s) appointed in the Chapter 11 Cases, if any, shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a DIP Order Event of Default has occurred. If the Debtors or any such Committee(s) do not contest the occurrence of a DIP Order Event of Default and therefore the right of the DIP Lender to exercise its remedies, or if the Debtors or any such Committee(s) do timely contest the occurrence of a DIP Order Event of Default and the Court after notice and hearing declines to stay the enforcement thereof, the automatic stay as to the DIP Lender shall automatically terminate at the end of such five (5) day notice period.

34.    Subject to the provisions of Paragraphs 31-33 above, upon the occurrence of a DIP Order Event of Default, the DIP Lender is authorized to exercise its remedies and proceed under or pursuant to the DIP Financing Agreements; except that, with respect to any of the Debtors' leasehold locations, the DIP Lender's rights shall be limited to such rights (i) as may be ordered by the Court upon motion and notice to the applicable landlord with an opportunity to respond that is reasonable under the circumstances; (ii) to which the applicable landlord agrees in writing with the DIP Lender; or (iii) which the DIP Lender has under applicable non-bankruptcy law. All proceeds realized from any of the foregoing shall be turned over to the DIP Lender for application to the Carve Out (if not previously funded as provided herein), the DIP Obligations, and the Prepetition Debt under, and in accordance with the provisions of, the DIP Financing Agreements, the Prepetition Financing Agreements, and this Interim Order.

35.    Nothing included herein shall prejudice, impair, or otherwise affect the Prepetition Lender's or the DIP Lender's rights to seek any other or supplemental relief in respect of the Debtors, nor the DIP Lender's rights, as provided in the DIP Financing Agreements, to suspend or terminate the making of loans and granting financial accommodations under the DIP Financing Agreements.

**D.    No Waiver of Remedies**

36.    The delay in or the failure of the Prepetition Lender or the DIP Lender to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the Prepetition Lender's or the DIP Lender's rights and remedies. Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights and remedies of the Prepetition Lender and/or the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Lender and/or the DIP Lender to (i) request conversion of the Chapter 11 Cases to a cases under Chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the Prepetition Lender and/or the DIP Lender may have.

## VII.    CERTAIN LIMITING PROVISIONS

**A.    Section 506(c) Claims and Waiver**

37.    Nothing contained in this Interim Order shall be deemed a consent by the Prepetition Lender or the DIP Lender to any charge, Lien, assessment, or claim against the DIP Collateral, the DIP Liens, the Prepetition Collateral, or the Adequate Protection Replacement

31

Liens under section 506(c) of the Bankruptcy Code or otherwise; provided, however, that during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

38.    As a further condition of the DIP Facility and any obligation of the DIP Lender to make credit extensions pursuant to the DIP Financing Agreements, upon entry of the Final Order, the Debtors (and any successor thereto or any representative thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Cases) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code.

**B.    Proceeds of Subsequent Financing**

39.    Without limiting the provisions and protections of Paragraph 40 below, if at any time prior to the irrevocable repayment in full of all DIP Obligations and the termination of the DIP Lender's obligations to make loans and advances under the DIP Facility, including subsequent to the confirmation of any Plan with respect to the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(c)(1) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Agreements, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Lender and applied in reduction of the DIP Obligations.

**C.    Prohibited Orders**

40.    Unless the DIP Lender has provided its prior written consent or all DIP Obligations have been irrevocably paid in full in cash (or will be irrevocably paid in full in cash upon entry of an order approving indebtedness described in Paragraph 40 above, or other arrangements for the payment of the DIP Obligations satisfactory to the DIP Lender in its sole and exclusive discretion have been made) and all DIP Commitments have terminated, there shall

32

not be entered in the Chapter 11 Cases, or in any Successor Cases, any order which authorizes any of the following:

(a)    Any modification, stay, vacation or amendment to the DIP Orders to which the DIP Lender has not consented;

(b)    A priority claim or administrative expense or unsecured claim against the Debtors (now existing or hereafter arising or any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 105, 326, 328, 330, 331,  364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114 of the Bankruptcy Code) equal or superior to the priority claim of the DIP Lender in respect of the DIP Obligations, except with respect to the Carve Out;

(c)    Any Lien on any DIP Collateral having a priority equal or superior to the Lien securing the DIP Obligations, except (a) with respect to the Carve Out, or (b) for the Permitted Prior Liens;

(d)    Any order which authorizes the return of any of the Debtors' property pursuant to section 546(h) of the Bankruptcy Code; or

(e)    Any order which authorizes the payment of any Indebtedness (other than those under the Prepetition Financing Agreements, Indebtedness reflected in the Initial Budget, and other Indebtedness approved by the DIP Lender, in each case incurred prior to the Petition Date or the grant of "adequate protection" (whether payment in cash or transfer of property) with respect to any such Indebtedness which is secured by a Lien other than as set forth in the DIP Orders).

## D.    Restrictions on Disposition of Collateral

41.    The Debtors shall not do the following:

(a)    sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the DIP Lender required under the DIP Financing Agreements (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or an order of this Court), except as part of the disposition of assets as contemplated in the Substantial Asset Disposition Motion; or

(b)    assume, reject, or assign any Lease without the prior consultation with the DIP Lender, except as contemplated in the Substantial Asset Disposition Motion, a Plan, or as otherwise provided for in the DIP Financing Agreements.

33

## VIII.  **OTHER RIGHTS AND OBLIGATIONS**

A.      **Good Faith Under Section 364(e) of the Bankruptcy
         Code; No Modification or Stay of this Interim Order**

42.      Based on the findings set forth in this Interim Order and in accordance with

section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by

this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter

modified, amended, or vacated by a subsequent order of this or any other court, the DIP Lender

is entitled to the protections provided in section 364(e) of the Bankruptcy Code and, no such

appeal, modification, amendment, or vacation shall affect the validity and enforceability of any

advances made hereunder or the DIP Liens or priority authorized or created hereby.

43.      Notwithstanding any such modification, amendment, or vacation, any claim

granted to the DIP Lender hereunder arising prior to the effective date of such modification,

amendment, or vacation of any DIP Protections granted to the DIP Lender shall be governed in

all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled

to all of the rights, remedies, privileges, and benefits, including the DIP Protections granted

herein, with respect to any such claim.  Since the loans made pursuant to the DIP Facility are

made in reliance on this Interim Order, the obligations owed the DIP Lender prior to the

effective date of any stay, modification, or vacation of this Interim Order shall not, as a result of

any subsequent order in the Chapter 11 Cases or in any Successor Cases, be subordinated, lose

their Lien priority or superpriority administrative expense claim status, or be deprived of the

benefit of the status of the Liens and claims granted to the DIP Lender under this Interim Order

and/or the DIP Financing Agreements.

DOCS_DE:196365.4 02980/001

**B.    DIP Lender Expenses**

44.    As provided in the DIP Financing Agreements, all reasonable out-of-pocket costs and expenses of the DIP Lender in connection with the DIP Financing Agreements, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses will be paid by the Debtors.  Payment of such fees shall not be subject to allowance by the Court; provided, however, the Debtors may seek a determination by the Court whether such fees and expenses are reasonable.  Under no circumstances shall professionals for the DIP Lender and/or Prepetition Lender be required to comply with the U.S. Trustee fee guidelines; provided, however, the Debtors shall provide to the Office of the United States Trustee a copy of any invoices for professional fees and expenses provided to the Debtors during the pendency of the Chapter 11 Cases; and shall reimburse the Prepetition Lender and the DIP Lender for all such fees in expenses within ten (10) days of receipt of a copy of each invoice, in the absence of a specific written objection as to the reasonableness of the amounts contained in the subject invoice.

**C.    Binding Effect**

45.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender and Prepetition Lender, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors), any Committee(s) (subject to the provisions of Paragraphs 22-23 above), whether in the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Cases.

**D.    No Third Party Rights**

46.    Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

**E.    No Marshaling**

47.    Neither the DIP Lender nor the Prepetition Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

**F.    Section 552(b) of the Bankruptcy Code**

48.    Upon entry of a Final Order, DIP Lender and the Prepetition Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the Debtors shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the DIP Lender and/or the Prepetition Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

**G.    Amendments**

49.    The Debtors and the DIP Lender may amend, modify, supplement, or waive any provision of the DIP Financing Agreements to make non-material changes to such agreements without further approval of the Court.    For the avoidance of doubt, any amendment, modification, supplement, or waiver that (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the DIP Commitments, or (iii) changes the maturity date of the DIP Facility shall be considered a material change.    Except as set forth above, all waivers, modifications, or amendments of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtors and the DIP Lender (after

36

having obtained the approval of the DIP Lender as provided in the DIP Financing Agreements)
and approved by the Court.

**H.    Survival of Interim Order**

50.    The provisions of this Interim Order and any actions taken pursuant hereto shall
survive entry of any order which may be entered:

      (a)    confirming any Plan in the Chapter 11 Cases,

      (b)    converting the Chapter 11 Cases to a Cases under chapter 7 of the
           Bankruptcy Code,

      (c)    to the extent authorized by applicable law, dismissing the Chapter 11
           Cases,

      (d)    withdrawing of the reference of the Chapter 11 Cases from this Court, or

      (e)    providing for abstention from handling or retaining of jurisdiction of the
           Chapter 11 Cases in this Court.

51.    The terms and provisions of this Interim Order including the DIP Protections
granted pursuant to this Interim Order and the DIP Financing Agreements and any protections
granted the Prepetition Lender shall continue in full force and effect notwithstanding the entry of
such order, and such DIP Protections and protections for the Prepetition Lender shall maintain
their priority as provided by this Interim Order until all of the DIP Obligations of the Debtors to
the DIP Lender pursuant to the DIP Financing Agreements and the Prepetition Debt has been
irrevocably paid in full and discharged (such payment being without prejudice to any terms or
provisions contained in the DIP Facility which survive such discharge by their terms).

**I.    Inconsistency**

52.    In the event of any inconsistency between the terms and conditions of the DIP
Financing Agreements and of this Interim Order, the provisions of this Interim Order shall
govern and control.

**J.      Enforceability**

53.     This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

**K.      Objections Overruled**

54.     All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled.

**L.      Waiver of Any Applicable Stay**

55.     Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

**M.      Proofs of Claim**

56.     Neither the Prepetition Lender nor DIP Lender will be required to file proofs of claim in the Chapter 11 Cases or in any Successor Cases.

**N.      Headings**

57.     The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

**O.      Retention of Jurisdiction**

58.     The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

## IX.      FINAL HEARING

59.     The Final Hearing to consider entry of the Final Order and final approval of the DIP Facilities is scheduled for December 16, 2014 at 1:30 p.m. (prevailing Eastern time) at the United States Bankruptcy Court for the District of Delaware.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing

38

may be held, and a separate Final Order may be presented by the Debtors and entered by this Court.

60.     On or before November 26, 2014, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "*Final Hearing Notice*"), together with copies of this Interim Order, the proposed Final Order and the DIP Motion, on: (a) counsel for the DIP Lender, (i) Riemer & Braunstein LLP, at Times Square Tower, Seven Times Square, Suite 2506, Attn: Steven E. Fox, Esq., Email: sfox@riemerlaw.com; (b) counsel for the Debtors, (i) Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, 40th Floor, Boston, MA 02111, Attn:   Richard   E.   Mikels Esq., Email: remikels@mintz.com, and (ii) Pachulski Stang Ziehl & Jones, LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones, Esq., Email: ljones@pszjlaw.com; (c) the parties having been given notice of the Interim Hearing; (d) any party which has filed prior to such date a request for notices with this Court; (e) counsel for any statutory committee, if any; (f) any party known to assert a Lien on any of the Collateral; and (g) the Office of the United States Trustee, 844 King Street, Suite 2207 Wilmington, DE 19801, Attn: Timothy J. Fox, Jr., Esq.; (i) the Internal Revenue Service.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than December 11, 2014 at 4:00 p.m. (prevailing Eastern time), which objections shall be served so that the same are received on or before such date by:  (a) counsel for the Debtors; (b) counsel for the DIP Lender; (c) any party which has filed prior to such date a request for notices with this Court; (d) counsel for any statutory committee, if any; and (e) the Office of the United States Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware.

61.     If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented jointly by the Debtors and by the DIP Lender and entered by this Court.

62.     Nothing in this Interim Order shall prejudice the rights of Ecosynthetix Ltd. ("Ecosynthetix") to assert that certain equipment provided by Ecosynthetix to the Debtors (a) is not (and will not be) collateral for the DIP obligations; or (b) that the Debtors cannot sell such equipment as part of the Substantial Asset Disposition.  The Debtors reserve any and all rights to oppose any such assertion.

Dated: November 26, 2014

_____
Honorable Kevin J. Carey
United States Bankruptcy Judge