IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: </br></br> ALSIP ACQUISITION, LLC, et al.,[1] </br></br> Debtors. | ) Chapter 11 </br> ) </br> ) Case No. 14-12596 (KJC) </br> ) </br> ) Jointly Administered </br> ) </br> ) Hearing Date: December 9, 2014 at 4:00 p.m. </br> ) Objection Deadline: December 8, 2014 at 12:00 p.m. </br> ) </br> ) Ref No. 11 |

**METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO'S OBJECTION TO DEBTORS' MOTION FOR ORDERS (A) ESTABLISHING BIDDING PROCEDURES IN CONNECTION WITH SALE OF CERTAIN REAL ESTATE AND EQUIPMENT OF THE DEBTORS; (B) APPROVING THE FORM AND MANNER OF NOTICES; (C) SETTING A SALE HEARING; (D) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; AND (E) GRANTING RELATED RELIEF**

Metropolitan Water Reclamation District of Greater Chicago (the "MWRD") hereby objects to Debtors' Motion for orders (A) establishing bidding procedures in connection with sale of certain real estate and equipment of the debtors, (B) approving the form and manner of notices, (C) setting a sale hearing, (D) authorizing the sale of assets free and clear of all liens, claims, and encumbrances, and (E) granting related relief (the "Bidding Procedures Motion") [Dkt. #11]. In objection to the Bidding Procedures Motion, the MWRD states as follows:

## I. Background

1. On November 20, 2014 (the "Petition Date"), Alsip Acquisition, LLC and APCA, LLC (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Alsip Acquisition, LLC (Tax ID No. XX-XXX4908), and APCA, LLC (Tax ID No. XX-XXX3005).

{1035.001-W0033702.}

2.  The Debtors are continuing in possession of their respective properties and the management of their respective estates as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.  Prior to its cessation of business on September 5, 2014, the Debtors purported to be the leading North American provider of responsibly made recycled paper for books and magazines, as well as for commercial printing and packaging applications. The Debtors' operational and manufacturing headquarters were located in Alsip, Illinois, and consisted of a mill located at 13101 South Pulaski Road, Alsip, Illinois 60803 (the "Mill") and a warehouse located at 13060 South Crawford Avenue, Alsip, Illinois 60803. Alsip Acquisition, LLC is the record owner of the Mill and did business as Futuremark Paper Company.

4.  The MWRD is a unit of local government authorized by Illinois statute to (a) provide for both drainage and treatment of sewage, industrial wastes and other wastes within its jurisdiction; (b) regulate the discharge of waste into local sewers connected with the sewers of other works of the MWRD; and (c) prevent water pollution. *See* 70 ILCS 2605/1, *et seq.* The purpose of the statute is to promote and protect the public health, safety and general welfare of the citizens within the MWRD's jurisdiction. *See* 70 ILCS 2605/1 (". . . maintenance of outlets for the drainage of the territory will conduce to the preservation of the public health").

5.  Every Significant Industrial User, as defined in the MWRD's Sewage and Waste Control Ordinance, within the MWRD's jurisdiction that discharges process wastewater into a sewerage system is required to obtain and timely renew a Discharge Authorization from the MWRD. A Discharge Authorization grants the user permission to discharge waste into the MWRD monitored sewers and, simultaneously, requires the MWRD to verify yearly user charges based, in accordance with the MWRD's User Charge Ordinance, on the strength and volume of the Significant Industrial User's waste water discharge into the MWRD's system.

6. The Mill is within the MWRD's jurisdiction, and the Debtors are required to comply with the Sewage and Waste Control Ordinance, the User Charge Ordinance and the Illinois compiled statutes. Prior to the Petition Date, the MWRD issued a Discharge Authorization to Alsip Acquisition, LLC.

7. As of the Petition Date, however, Alsip Acquisition, LLC owed the MWRD the approximate amount of $3,500,000 for unpaid user charges, penalties and interest as established by the Ordinance.

8. Prior to the Petition Date, on account of unpaid amounts due the MWRD, and pursuant to 70 ILCS 2605/1, *et seq.*, the MWRD issued six Notices of Lien (the "Notices of Lien") and recorded them with the Cook County Recorder of Deeds, as follows:

| Date of Recording | Amount |
|---|---|
| 05/02/14 | $ 231.61 |
| 05/02/14 | $ 1,468,222.82 |
| 05/02/14 | $ 475,935.01 |
| 07/18/14 | $ 32,308.08 |
| 07/18/14 | $ 539,808.22 |
| 08/27/14 | $ 539,808.22 |
| | $ 3,056,313.96 |

Copies of the Notices of Lien are attached hereto as Exhibit A.

9. As a result of the recording of the Notices of Lien, the MWRD holds a lien on the Mill to secure the payment of all amounts specified in the Notices of Lien (the "Lien").

10. Wells Fargo Bank, National Association ("Wells Fargo") recorded a mortgage on the Mill with the Cook County Recorder of Deeds on April 19, 2010 and amendments on September 17, 2010 and July 14, 2011 purporting to secure, together with all other collateral granted by the Debtors, the loans made by Wells Fargo to the Debtors prepetition.

11. On November 24, 2014, the MWRD filed its *Motion of Metropolitan Water Reclamation District of Greater Chicago to Transfer Venue of this Case to the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division Pursuant to 28 U.S.C. § 1412 and Bankruptcy Rule 1014* [Dkt. #52]. Since the filing of the venue transfer motion, the MWRD has been contacted by at least two other creditors asserting mechanics' liens senior in priority to the liens of Wells Fargo pursuant to Illinois law.

## II.    Objection[2]

### A.    The Sale Should Occur in Illinois

12. The sale of Debtors' assets should only occur – if at all – after venue is transferred to Chicago. This case revolves around the former leading North American provider of recycled paper who admittedly had its operational and manufacturing headquarters in Alsip, Illinois. The Debtors' real property assets – the Mill and Warehouse – are located in Illinois, not in Delaware. The Debtors' primary personal property assets – the equipment – are located in Illinois. And, nearly all of Debtors' creditors are located in Illinois – and none are in Delaware. The proposed sale involves only assets and creditors based primarily in Illinois.

13. Additionally, the Debtors' books and records and the former, present, and future employees of the Debtors and Resolute FP Illinois are located in or around Alsip, Illinois. Requiring the Debtors' various Illinois-based creditors to proceed in Delaware is an unnecessary burden. Since the filing of venue transfer motion, one creditor has already joined in the motion and at least two additional creditors have indicated their intent. This sale should occur in Illinois to allow the entire creditor body – the majority of which is in Illinois – to participate in the sale

---

[2] The MWRD reserves the right to assert all objections herein as well as any other objections at any further hearing related to the sale of the Debtors' assets.

and protect their seemingly ignored statutory lien rights. Accordingly, the MWRD objects to any sale procedure that authorizes the sale of Debtors' assets prior to transfer of venue to Illinois.

### B.    Sale of the Assets Free and Clear is Improper

14.    Sale of the assets free and clear is improper because it impedes the rights of the MWRD and other secured creditors. As part of the bidding procedures, the Debtors propose to sell all of their assets free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f). The Debtors purport to have authority for a sale free and clear because (1) Wells Fargo "has consented to a free and clear sale to the Buyer (other than the Permitted Encumbrances[3])" and (2) that "is the same treatment such parties would receive in the event the Lender [Wells Fargo] were to foreclosure on its collateral pursuant to the Uniform Commercial Code and Illinois law." [Dkt. #11, at ¶¶ 34-35].

15.    Wells Fargo's consent is not a valid basis for the sale of the assets free and clear. On information and belief, there are several previously undisclosed mechanics' lien claimants with liens senior to those of Wells Fargo pursuant to Illinois mechanics' lien law. The consent of Wells Fargo – as a junior lienholder – cannot negate any objection these senior mechanics' lienholders may have to the sale of Debtors' assets free and clear. As such, the Debtors cannot rely on § 363(f)(2) to sell the assets free and clear.

16.    The Debtors also cannot rely on § 363(f)(5) to sell the assets free and clear. Courts in the Third Circuit have required debtors to pay adequate protection to preserve the rights of a lienholder whose lien was stripped under § 363(f)(5). *In re Lehigh Coal and*

---

[3] It is unclear whether the MWRD's Lien falls within the definition of "Permitted Encumbrances" in the form of Asset Purchase Agreement filed with the Bidding Procedures Motion (the "Proposed APA") and no schedule specifically listing such Permitted Encumbrances is contemplated by the Proposed APA. The MWRD notes, however, that at the "first day hearing" in this case, the Debtors acknowledged their intent to include the Lien as a Permitted Encumbrance within the definition in the Proposed APA. The MWRD will seek written confirmation from both the Debtors and any proposed purchaser that the Lien will not be affected by any sale of the Debtors' property.

*Navigation Co.*, 2012 WL 27465, No. 08-51957, at *1 (Bankr. M.D.Pa. Jan. 5, 2012) (citing *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (9th Cir. BAP 2008)). On appeal, the District Court in *Lehigh Coal* found that "the bankruptcy court clearly erred in finding that the [junior lienholder] could be adequately protected by having its encumbrances attach to the proceeds of the § 363 sale, where the bankruptcy court failed to find that proceeds were generated and the record evidence establishes that none were generated." *Lehigh Coal*, 2012 WL 27465, at *4 (internal citations omitted).

17. The District Court found that the junior lienholder had to be compensated in some fashion or the free and clear aspect of the sale rejected. *Id.* Because the sale had already been completed, the Bankruptcy Court's "only alternative on remand, is to allow the lien to remain attached to the property conveyed and have the current owner deal with it." *Id.*; *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 794 (Bankr. D. Del. 2002) (sale of property free and clear of junior lien required adequate protection payment of full payment in cash to junior lienholder to compensate for rights lost under agreement). Similarly, this Court should deny the sale free and clear of the MWRD's liens because the MWRD is not being compensated for the value of its interest in the Mill – otherwise, the sale of the Mill free and clear must be denied.

### C.  Additional Objections to Bidding Procedures

18. This Court should also deny the Bidding Procedure Motions because the break-up fee is improper given the size and benefits of this case, the limits on "successor liability" create a conflict with the asset purchase agreement and the MWRD's statutory authority, and the proposed bidding procedures and purchase agreement fail to allocate the purchase price or value the assets being sold.

19. The proposed sale transaction is for $5,000,000, less certain prorations, with a "break-up fee" of $320,000. This break-up fee is extravagant and unnecessary given the size and

scope of the sale. The cases the Debtors rely upon for comparative break-up fees were significantly larger in size and scope. The *In re Global Motorsport Group, Inc., et al.,* (Case No. 08-10192 (KJC) (Bankr. D. Del. February 14, 2008) case involved a $12,500,000 sale with a 4% break-up fee and *In re FoxMeyer Corp. et al.,* Case No. 96-1329 (HSB) through 96-1334 (HSB) (Bankr. D. Del., Oct. 9, 1996) involved an $87,000,000 sale. This case is a $5,000,000 sale, and a 6.4% break-up fee of $320,000 is entirely inappropriate. If the Debtors have $320,000 to pay a "break-up fee" that amount should instead be carved-out for the benefit of the non-Wells Fargo creditors.

20. Furthemore, the Bidding Procedures Motion should be denied because it requests the assets be sold free and clear of any successor liability. [Dkt. #11, at ¶ 37]. The Debtors' asset purchase agreement also provides for the MWRD's Discharge Authorization to be an "Excluded Permit" from any sale. However, the asset purchase agreement requires the Debtors to "take all actions required and provide sufficient resources (human and financial): . . . (ii) to reasonably cooperate with the Purchaser to obtain any necessary consents, approvals and Permits (including the Excluded Permits)." [Dkt. #11-1, at ¶ 4.2 (hanging paragraph)]. This implies that the MWRD may be sought to provide a Discharge Authorization to the purchaser of the assets. This creates a seemingly incurable conflict – without full payment to MWRD – between the sale terms and the MWRD's authority.

21. Pursuant to the MWRD's Sewage and Waste Control Ordinance, a Discharge Authorization may not be transferred to another entity without the satisfaction of certain conditions, including the payment of all past due charges. Accordingly, the MWRD will not approve a transfer of the Debtors' Discharge Authorization to Resolute FP Illinois LLC or any other purchaser of the Debtors' assets, absent payment of the Debtors' past due charges and the satisfaction of all other required conditions. In other words, any sale of the assets free and clear

of liability for the MWRD's user charges will absolutely (1) create a violation of ¶ 4.2 of the asset purchase agreement; and (2) preclude any assignment of the Discharge Authorization to a purchaser.

22. Finally, the Bidding Procedures Motion should be denied because the proposed bidding procedures and asset purchase agreement do not allocate the purchase price or value the property being sold [Dkt. #11-1, at ¶ 1.8]. There is no indication as to whether any portion of the $5,000,000 is being paid for real property or personal property assets. Furthermore, there is no indication of the value of any of the property being sold. These items are critical in light of the previously unrecognized mechanics' lien claimants who, upon information and belief, have lien priority senior to Wells Fargo on some or all of the real property. The allocation of the purchase price is similarly important to the MWRD and the more than $3,000,000 in liens it has against the Mill. It is imperative for the Debtors and purchaser to disclose any allocation of the purchase price and valuation of the property being sold prior to any sale when there are numerous third party lien claimants asserting various priority liens against the sale assets.

**[Remainder of Page Intentionally Left Blank]**

WHEREFORE, the Metropolitan Water Reclamation District of Greater Chicago prays that the Court deny the Bidding Procedures Motion.

Dated: December 8, 2014  
Wilmington, Delaware

LANDIS RATH & COBB LLP

_____  
Adam G. Landis (No. 3407)  
919 Market Street, Suite 1800  
Wilmington, Delaware 19801  
Telephone: (302) 467-4400  
Facsimile: (302) 467-4450  
Email: landis@lrclaw.com

*Co-Counsel for Metropolitan Water Reclamation District of Greater Chicago*

- and –

Barry A. Chatz, Esq.  
David A. Golin, Esq.  
Kevin H. Morse, Esq.  
ARNSTEIN & LEHR LLP  
120 S. Riverside Plaza, Suite 1200  
Chicago, Illinois 60606  
Telephone: (312) 876-7100  
Facsimile: (312) 876-6273

*Co-Counsel for Metropolitan Water Reclamation District of Greater Chicago*