UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br><br>ALSIP ACQUISITION, LLC et al.,<br><br>Debtor. | Case No. 14-12596 (KJC)<br>Chapter 11<br>(Jointly Administered)<br><br>**Related Docket No. 11** |

**OBJECTION OF VOITH PAPER FABRIC & ROLL SYSTEMS INC. TO DEBTORS' MOTION FOR ORDERS (A) ESTABLISHING BIDDING PROCEDURES IN CONNECTION WITH SALE OF CERTAIN REAL ESTATE AND EQUIPMENT OF THE DEBTORS; (B) APPROVING THE FORM AND MANNER OF NOTICES; (C) SETTING A SALE HEARING; (D) AUTHORIZING THE SALE OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES; AND (E) GRANTING RELATED RELIEF**

Voith Paper Fabric & Roll Systems Inc. ("Voith") by its attorneys, herby objects (the "Objection") to the Debtors' Motion for Orders (A) Establishing Bidding Procedures in Connection with Sale of Certain Real Estate and Equipment of the Debtors; (B) Approving the Form and Manner of Notices; (C) Setting a Sale Hearing; (D) Authorizing the Sale of the Assets Free and Clear of All Liens, Claims, and Encumbrances; and (E) Granting Related Relief (the "Sale Motion") [Docket No. 11]. In support of this Objection, Voith states as follows:

## Background

1. On November 20, 2014 (the "Petition Date"), Alsip Acquisition, LLC and APCA, LLC (the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2. Prior to the Petition Date, the Debtors were in the business of manufacturing recycled paper products in Alsip, Illinois.

25582205v2

3. Prior to idling their mill in September 2014, the Debtors utilized certain large rolls and other equipment (collectively, the "Roll Equipment") in the paper products manufacturing process. This Roll Equipment was serviced by Voith under a "Total Roll Management" program and course of dealing between the parties whereby Voith managed substantially all of the Roll Equipment servicing needs of the Debtors (the "TRM Program"). The Debtors delivered the Roll Equipment to Voith, and Voith performed certain repairs and other services on the Roll Equipment, including grinding, balancing, rebuilding, and re-covering the Roll Equipment. The Roll Equipment was returned and invoiced to the Debtors as it was completed, all pursuant to the TRM Program and course of dealing between the parties.

4. As of the Petition Date, the Debtors owed $443,798.00 to Voith for services performed on various pieces of Roll Equipment that had been repaired, serviced, and returned to the Debtors (the "Returned Equipment"). A summary of the amounts due related to the repair and service of the Returned Equipment is attached hereto as Exhibit A.

5. Also as of the Petition Date, Voith had in its possession 11 pieces of Roll Equipment (the "Retained Equipment") owned by the Debtor that had been delivered to Voith for repair and service. Voith currently maintains, and has continuously maintained possession of the Retained Equipment since the date of its delivery to Voith. Voith has performed various repairs and services on the Retained Equipment; the value of this work totals $164,323.00. A list of the Retained Equipment and the value of the work performed on each item of Retained Equipment to date is attached hereto as Exhibit B.

6. As described in further detail below, Voith has first-priority possessory liens against the Retained Equipment arising under statute and common law. Such liens secure the value of the services performed on the Retained Equipment as well as services performed on the

25582205v2

Returned Equipment. The total amount secured by Voith's liens on the Retained Equipment is therefore $608,121.00.

7. On the Petition Date, the Debtors filed the Sale Motion [Docket No. 11], seeking authority to sell substantially all of their assets free and clear of liens, claims, and encumbrances. The Sale Motion indicates that the Debtors intend to sell "certain real estate and equipment of the Debtors, as set forth more fully on Schedule 1.1" of the asset purchase agreement (the "APA") between the Debtors and Resolute FP Illinois LLC (the "Stalking Horse"). *See* Sale Motion, ¶ 7. Although the APA is attached to the Sale Motion, Schedule 1.1, which lists the "Purchased Assets" as defined by the APA, is not attached or available for creditors and other parties in interest to review.

8. Section 1.1(b)(ii) of the APA appears to relate to the Retained Equipment, and suggests that the Retained Equipment is an "Excluded Asset" that is not being purchased by the Stalking Horse if it is the successful bidder at the auction contemplated by the Sale Motion. Section 1.1(b)(ii) provides as follows:

> 1.1(b) Excluded Assets. Notwithstanding anything to the contrary in this Agreement, the Purchased Assets shall exclude all of the following (collectively, the "Excluded Assets"):
> 
> ...
> 
> (ii) tangible personal property of the Seller not in the possession of Seller to the extent that Seller would be required to pay any amount to a third party to make them available to Purchaser, it being the intention of the parties that these assets will be available to Purchaser subject to Purchaser's willingness to pay such amounts or any amounts negotiated between Purchaser and the relevant third party, in each case with no liability of Seller;

*See* APA, Exhibit A to Sale Motion, § 1.1(b)(ii).

9. Section 1.3 of the APA provides that the Stalking Horse is not assuming certain "Excluded Liabilities." Among the "Excluded Liabilities" that the Stalking Horse is not assuming are "any Encumbrances (including, without limitation, mechanic's or warehousemen's

liens) except Permitted Encumbrances held or asserted with respect to the Seller or any of the Purchased Assets; provided, however, the Seller shall have no obligation to pay any amounts due, whether or not liens, with respect to any tangible personal property not on premises." *See* Section 1.3(i) of APA.

10. The intended impact of the language in Section 1.1(b)(ii) and Section 1.3(i) of the APA on the Retained Equipment is unclear. On the one hand, the first clause of Section 1.1(b)(ii) of the APA suggests that the Retained Equipment is an Excluded Asset that is not being sold pursuant to the Sale Order. On the other hand, the later clauses of Section 1.1(b)(ii) of the APA suggest that the Debtors may sell the Retained Equipment upon the happening of a later contingent event (the agreement of the Stalking Horse and Voith) pursuant to an order approving the Sale Motion, and without further notice to creditors. Further, the Sale Motion and Section 1.3(i) of the APA suggest that liens, claims, and encumbrances will be stripped from the Retained Equipment via the entry of an order approving the Sale Motion, regardless of whether and when the Retained Equipment is ultimately sold. *See* Sale Motion, ¶ 16; APA, § 1.3(i).

## Argument and Relief Requested

11. Voith objects to the Sale Motion to the extent that the Debtors intend to strip Voith's possessory liens and/or sell the Retained Equipment free and clear of Voith's possessory liens without providing adequate protection to Voith pursuant to 11 U.S.C. § 363(e).

12. Voith's rights to assert possessory liens upon the Retained Equipment arise under Wisconsin statutory and common law because all of Voith's work on the Retained Equipment was completed in Wisconsin, and the Retained Equipment has remained in Voith's possession in Wisconsin since it was first delivered there. *See e.g., In re Cuff,* 54 B.R. 424, 425-426 (Bankr.

W.D. Wis. 1985); *Quad/Graphics, Inc. v. R.L. Newport and Company, Inc. (In re R.L. Newport and Company, Inc.)*, 10 B.R. 436, 437 (Bankr. S.D.N.Y. 1981).

### A. Voith's Statutory Lien

13. First, Voith has a lien on the Retained Equipment pursuant to Wis. Stats. § 779.41(1), which is Wisconsin's "Mechanic's Lien" statute. This lien secures the amounts due for work performed and materials expended on the Retained Equipment ($164,323.00), and takes priority over prior-perfected security interests to the extent of $1,500.00.[1] Section 779.41(1) of the Wisconsin Statutes reads, in part:

> Every mechanic and every keeper of a garage or shop, and every employer of a mechanic who transports, makes, alters, repairs or does any work on personal property at the request of the owner or legal possessor of the personal property, **has a lien on the personal property for the just and reasonable charges therefor, including any parts, accessories, materials or supplies furnished in connection therewith and may retain possession of the personal property until the charges are paid**. The lien provided by this section is subject to the lien of any security interest in the property which is perfected as provided by law prior to the commencement of the work for which a lien is claimed unless the work was done with the express consent of the holder of the security interest, but only for charges in excess of $1,500…

Wis. Stats. § 779.41(1) (emphasis added).

### B. Voith's Common Law Bailee's Lien

14. Second, and most importantly, Voith also has a common law bailee's lien on the Retained Equipment, which secures the amounts due for work performed and materials expended on both the Retained Equipment <u>and</u> the Returned Equipment (a total of $608,121.00). *See Moynihan Assoc. Inc. v. Hanisch*, 56 Wis.2d 185, 190 (Wis. 1972) (confirming the continued

---

[1] To the extent Voith's work was done with the express consent of the holder of a prior-perfected security interest, Voith's lien under Wis. Stat. § 779.41(1) takes priority over such prior-perfected security interest to the full extent of Voith's statutory lien ($164,323.00).

validity of common law liens, notwithstanding the existence of statutory liens); *Quad/Graphics*, 10 B.R. at 438 (same).

15. In Wisconsin, a common law bailee's lien is recognized in favor of "a person who has bestowed labor upon an article or done some other act in reference to it by which its value has been enhanced," and the bailee has the right to detain the article until the bailee is reimbursed for its expenditures and labor. *See Moynihan*, 56 Wis.2d at 190.

16. A Wisconsin common law bailee's lien arises where three elements are present: (1) there must be an agreement, express or implied, to redeliver the property bailed when the purpose of the bailment has been fulfilled; (2) possession of the chattel must be temporarily transferred while general title of the chattel remains in the hands of the original owner; and (3) the general title holder must be out of possession of the chattel, and the bailee must have possession of it. *See Moynihan*, 56 Wis.2d at 190-191. Each of these elements is present here. The Debtors delivered the Retained Equipment to Voith with the understanding that Voith would perform the necessary services on the Retained Equipment and redeliver it to the Debtors when the work was completed, and Voith is currently in possession of the Retained Equipment even though the Debtors maintain general title to it.

17. Where, as here, the work to be done upon the bailed property may be regarded as a single transaction, agreement, or unit, the lien attaches to all of the property in the bailee's possession to secure payment of work completed on the property in the bailee's possession, <u>as well as work completed on property that has already been returned to the owner of the property</u>. *See Moynihan*, 56 Wis.2d at 192 (finding that where a portion of goods received under verbal agreement were improved and returned by a bailee, the bailee's common law lien did not abate proportionately; rather, the bailee was permitted to assert a common law lien for all the labor and

25582205v2

material expended on all the goods against the portion remaining in his possession); *Quad/Graphics,* 10 B.R. at 438 (interpreting Wisconsin law and noting that where the property that is the subject of a bailment comes into the hands of the bailee as part of a single transaction or contract, common law bailee's lien attaches to all of the goods in the hands of the bailee, even where he has only performed the contract as to part of the goods).

18. As described above, Voith serviced substantially all of the Debtors' Roll Equipment under the TRM Program, and all work performed pursuant to the TRM Program constituted a single transaction, agreement, or unit. Therefore, Voith has a common law bailee's lien against the Retained Equipment that secures the entire $608,121.00 due for services completed and materials expended by Voith on the Returned Equipment <u>and</u> the Retained Equipment.

19. Voith's common law lien is a first-priority possessory lien against the Retained Equipment in the amount of $608,121.00. Article 9-333 of the Uniform Commercial Code, adopted by Wisconsin at Wis. Stats. § 409.333, defines "possessory lien" as a lien "(a) Which secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business; (b) Which is created by statute *or rule of law* in favor of the person; and (c) Whose effectiveness depends on the person's possession of the goods." Wis. Stats. § 409.333(1)(a)-(c) (emphasis added). Wis. Stat. § 409.333(2) further provides that "a possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise." Wis. Stat. § 409.333(2).

20. Here, Voith's common law bailee's lien fulfills all of the elements of a possessory lien: it is a lien that secures payment for services and materials, created by common rule of law,

and it depends on possession. Because the common law bailee's lien is not created by a statue that limits its priority, it is a first-priority possessory lien in the entire amount of $608,121.00 due to Voith for services and materials.

### C. Voith's Request for Adequate Protection Pursuant to 11 U.S.C. § 363(e)

21.     Section 363(e) of the Bankruptcy Code provides that "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

22.     "Adequate protection" is defined by Section 361 of the Bankruptcy Code, and may be provided by cash payment or periodic cash payments, additional or replacement liens, or other relief that will result in the realization of the "indubitable equivalent" of an entity's interest in the property. See 11 U.S.C. § 361.

23.     Voith is entitled to adequate protection to the extent that the Sale Motion and APA seek to strip Voith's possessory liens and/or sell the Retained Property "free and clear" of Voith's possessory liens. The Sale Motion and APA do not provide adequate protection of Voith's possessory lien rights in the Retained Equipment. The Sale Motion and APA contemplate the sale of the Debtors' assets "free and clear" of liens, claims, and encumbrances, purportedly including the contingent future sale of the Retained Equipment "free and clear" of Voith's possessory lien rights without the payment of identifiable proceeds to Voith from such contingent sale.

25582205v2

24. The stripping of Voith's possessory liens and/or the sale of the Retained Equipment free and clear of Voith's first-priority possessory liens should not be permitted, on a contingent basis or otherwise, without the provision of adequate protection to Voith.

### RESERVATION OF RIGHTS

25. Voith hereby reserves the right to appear at the hearing on the Sale Motion, and to supplement this Objection.

WHEREFORE, the undersigned requests that the Court: (a) deny the Sale Motion to the extent that it requests the stripping of Voith's possessory liens and/or the sale of the Retained Equipment free and clear of Voith's possessory liens without the provision of adequate protection to Voith; and (b) grant such other and further relief as the Court deems appropriate.

Dated this 8th day of December, 2014.

SULLIVAN HAZELTINE ALLINSON LLC

/s/ William A. Hazeltine

William A. Hazeltine, Esq.
901 North Market St., Suite 1300
Wilmington, DE 19801
302.428.8191
whazeltine@sha-llc.com

and

L. Katie Mason, Esq.
Reinhart Boerner Van Deuren s.c.
1000 North Water St., Suite 1700
Milwaukee, WI 53202
414.298.8339
kmason@reinhartlaw.com

*Counsel for Voith Paper Fabric & Roll Systems Inc.*